THE FIRST NATIONAL BANK OF ORLANDO, FLORIDA, A CORPORATION UNDER THE LAWS OF THE UNITED STATES, AND WILLIAM B. JACKSON AS RECEIVER OF SAID BANK, APPELLANTS, VS. JAMES A. GREIG IN HIS OWN RIGHT, AND AS TRUSTEE FOR JOHN WOODHAM, F. L. WOODHAM, HENRY T. BUTLER, J. C. STRATFORD, M. KATZ AND SUE B. KATZ, HIS WIFE, J. E. FOXWORTHY, JOHN M. LEE, P. A. VANS-AGNEW, MINNIE L. DOUGLASS AND E. S. DOUGLASS, HER HUSBAND, MARY L. DOUGLASS, M. T. SKIPWORTH, M. VILLIERS STUART, AND JOHN WOODHAM, F. L. WOODHAM, HENRY T. BUTLER, J. C. STRATFORD, M. KATZ, SUE B. KATZ, BY J. E. FOXWORTHY HER NEXT FRIEND, J. E. FOXWORTHY, JOHN M. LEE, P. A. VANS-AGNEW, E. S. DOUGLASS, MINNIE L. DOUGLASS, HIS WIFE, BY J. E. FOXWORTHY, HER NEXT FRIEND, MARY L. DOUGLASS, M. T. SKIPWORTH AND M. VILLIERS, APPELLEES.

1.　The individual property of a non-resident partner may be levied upon under a writ of attachment lawfully issued in a suit against the co-partners, and such individual property will be subject to sale under execution in pursuance of a valid judgment regularly obtained, condemning the same to sale.

2.　Section 1017 of the Revised Statutes is to be strictly construed, and does not provide or contemplate that several or separate personal judgments may be rendered against individual partners not served with process, in a suit against the various partners composing the firm.

3.　A sale of the individual property of a member of a firm who has neither been served with process nor entered an appearance, and whose property has not been attached, made under an execution issued upon a separate personal judgment entered against such individual member in a suit against the various members of the firm, is absolutely void, and conveys no title to the purchaer.

4.  A purchaser at execution sale under a void judgment is not
    entitled to an injunction restraining the sale of the prop-
    erty under execution issued in pursuance o fa subsequent
    valid judgment.

Appeal from the Circuit Court for Osceola County.

## Statement.

The appellees herein, James A. Greig and others, filed their bill of complaint in the Circuit Court of Osceola county against the appellant, the First National Bank of Orlando, wherein it was averred that Greig in his own right, and as trustee for his co-appellees, was the owner of certain lands in said county therein described, and in possession thereof. The bill set forth that his title was derived by purchase at an execution sale held on November 6th, 1893, under an execution issued on October 6th, 1893, in pursuance of a judgment recovered on June 20th, 1893, by Greig in the Circuit Court of Osceola county against one J. B. Watson as a member of the firm of A. E. Drought and J. B. Watson, partners doing business under the firm name of the Kissimmee City Bank, and attached hereto as an exhibit a copy of sheriff's deed. It was then alleged that on October 4th, 1894, the First National Bank of Orlando recovered judgment in the same court against A. E. Drought and J. B. Watson, partners as aforesaid, for $5,598.88 damages and costs; that said judgment was based on a writ of attachment against the property of said defendants, which was levied upon the lands described in the bill as the property of said Watson on October 5th, 1893; that execution had been issued on said judgment and levied upon said lands which were advertised thereunder for sale on the first Monday in November, 1894. The

bill prayed for an injunction restraining the sale and for a: decree that the judgment of the bank did not constitute a lien upon the lands.

A supplemental bill was afterwards filed alleging the dismissal of the levy mentioned in the original bill; that the judgment of the First National Bank of Orlando had been amended, and an *alias* execution issued and levied upon the lands described in the original bill together with certain additional lands described in the supplemental bill, which were also averred to be the property of complainant, in his own right and as trustee, and it was alleged that complainant had acquired title thereto at the execution sale referred to in the original bill.

Answers were filed to the original and supplemental bill, admitting the recovery of judgment by the First National Bank of Orlando, the issuance of execution thereon, the levy thereunder upon the lands mentioned, and that the same were advertised for sale. The answers averred that the judgment of Greig was void; that the court had not obtained jurisdiction of the person of Watson in the suit in which it was rendered, nor had it obtained jurisdiction over the property by attachment and constructive notice to him; that summons in said suit was issued on May 24th, 1893, against A. E. Drought and J. B. Watson, partners doing business as the Kissimmee City Bank, and served upon A. E. Drought, but no service was effected or perfected upon J. B. Watson; that on the rule day in June Drought, individually, appeared by attorney, but no appearance was entered for Watson; that the clerk on said rule day entered a default against Watson for want of appearance, and afterwards on June 20th, 1893, entered a final judgment by default against him; that Drought on the rule day in July filed a plea denying that any partnership existed between him

and Watson, upon which plea issue was joined on the
rule day in August; that such plea was afterwards with-
drawn in October, 1893, and judgment entered against
Drought.   It was then averred that the judgment against
Watson, pending the appearance and pleas of Drought,
was illegal and void.   It was admitted that execution
issued on October 6th, 1893, on the judgment against
Watson, that the property mentioned in the bill was
levied upon thereunder, and sold to Greig, the complain-
ant, who purchased it in his own right and as trustee,
as set forth in the bill.   The answers further alleged that
the property was the property of Watson at the time the
bank obtained its judgment, and that the execution issued
thereon was the only legal execution against Watson.

Final hearing was had upon the original and sup-
plemental bills, and the answers thereto, and a decree
was rendered that a temporary injunction theretofore
granted be made perpetual, and enjoining the defendant
bank, and William B. Jackson, its receiver, from enforc-
ing the execution of the bank upon the premises des-
cribed in the original and supplemental bills, and decree-
ing that the judgment of the bank was not a lien upon
said premises.   From that decree this appeal is prose-
cuted, and it is assigned as error (1st) that the court
erred in overruling a demurrer to the bill; (2nd) that
the court erred in refusing to dissolve the injunction on
motion made on answer; (3rd) that the court erred in
deciding the equities to be with complainant; (4th) that
the court erred in holding the judgment of complainant
to be valid against the lands of Watson; (5th) that
the court erred in holding the judgment of complainant
to be prior to that of the bank against the lands of Wat-
son; (6th) that the court erred in holding that appel-

lants could not attack the validity of the judgment of complainant in this proceeding; and (7th) that the court erred in entering the final decree.

The other facts are stated in the opinion of the Court.

*Beggs & Palmer,* for Appellants.

*E. D. Beggs,* for Appellees.

GLENN, C., (*after stating the facts.*)

Appellants abandon their first assignment of error, and discuss the remaining assignments together, contending that the title claimed by appellee Greig, trustee, derived from the sale of the real estate mentioned in the bills of complaint under the execution in favor of Greig against Watson is invalid, because, as they insist, the judgment upon which that execution issued is void. No replications were filed to the answers, and the cause was heard in the court below upon the original and supplemental bills and answers. It appears that the judgment in favor of Greig against Watson was entered by the clerk on June 20th, 1893, but the allegations do not clearly exclude the idea that the clerk may have entered the judgment by direction of the court. The suit in which that judgment was obtained was begun by Greig on May 24th, 1893, against Watson and one Drought as partners doing business under the firm name of Kissimmee City Bank. The summons issued therein was served upon Drought only, and no service, either personal or by publication, was ever made in that suit upon Watson. On the return day of the summons a default

was entered against Watson, and subsequently, on June 20th, the judgment against him under which appellees claim title was entered. This was a separate personal judgment against Watson individually. On the return day of the summons Drought appeared, and thereafter filed his plea denying the partnership. In October, 1893, he withdrew this plea and thereupon a separate judgment was entered against him personally in the same suit. It is claimed by appellant that under the facts stated the Circuit Court never acquired jurisdiction of the person of Watson so as to enable it lawfully to enter the judgment of June 20th, 1893.

The appellant claims the right to sell the lands mentioned in the bills under a judgment obtained by it in the same court, but subsequently to the judgment obtained by Greig. The suit in which that judgment was obtained was begun by appellant against Watson & Drought as partners under the firm name of Kissimmee City Bank, and in that suit a writ of attachment was issued on May 16th, 1893, which, upon October 5th, 1893, was levied upon the lands mentioned in the bills of complaint. Watson being a non-resident, service was obtained upon him by publication in said suit, and thereafter on October 4, 1894, final judgment against said Watson & Drought, partners as aforesaid, was obtained, and the property attached was thereby condemned to be sold. The execution under which the sale sought to be enjoined was attempted was issued upon this judgment.

It clearly appears that the lands described in the bills of complaint were the individual property of Watson at the time Greig's suit was begun, and the court is of opinion that the lands under the circumstances stated, would

be subject to sale under appellants' execution, unless the title derived by appellees from the sale under the execution issued upon the judgment of Greig vs. Watson is valid, and therefore the only question to be decided is, whether that sale carried a valid title to the lands as against Watson, the judgment debtor. As Watson never appeared in the suit instituted by Greig, and no service of process either personal or by publication was ever had upon him therein, and no attachment or seizure of his property was attempted in that suit until after final judgment was entered against him, it is clear that the court never acquired jurisdiction to render the judgment of June 20th, unless by virtue of the service upon his co-partner as authorized by section 1017, Revised Statutes, such jurisdiction may be maintained. That section is as follows: "When any original process is sued out against several persons composing a mercantile or other firm, the service of said process on any one member of said firm shall be as valid as if served upon each individual member thereof, and the plaintiff may after service upon any one member as aforesaid proceed to judgment and execution against them all." The court has held that this statute is to receive a strict construction. McCallum v. Culpepper, 41 Fla. 107, 26 South. Rep. 187. It does not provide or contemplate that several or separate personal judgments against individual partners not served, may be entered in suits against partners where one only is served. It authorizes one final judgment to be entered against all the members composing a firm where service is had upon one member only, or where one dies and his death is suggested under the provisions of section 993 Revised Statutes against the surviving members of the firm upon such service, but the service authorized by that

statute is by its terms made sufficient only for a final judgment of this character, in cases where the members not served have not appeared in the action or otherwise submitted themselves to the jurisdiction of the court. The separate personal judgment obtained by Greig against Watson can not be supported by the service upon his copartner under this statute, and as the court had not otherwise acquired jurisdiction of his person, or jurisdiction by seizure of his individual property described in the bill, the sale made under the execution issued upon that judgment conveyed no title to appellees.

The decree of the court below is reversed, and the cause remanded with directions to enter an order dismissing the bills of complaint.

MAXWELL, C., concurs.   HOCKER, C., absent.

PER CURIAM.

The foregoing opinion has been examined by the court and is hereby approved and adopted and ordered to be filed as the opinion of the court in said cause.